I move to the second case this morning Urbanek v. Saul. May it please the court good morning Dana Duncan on behalf of Gregory Urbanek. Let me start by indicating Mr. Urbanek and I are not claiming that his mental impairments alone would be disabling. What we are talking about in this particular case is an issue that this court has for more than a decade indicated that Social Security needs to comply with which is the issue of work pace and in this pile of limitations and restrictions Social Security has chose to call a residual functional capacity and whether you think about it and I try to explain it to people as literally a scale of justice when you have enough restrictions on one side you qualify by use of a vocational expert. We have a severe impairment under step two you consider it whether it meets any of the four B criteria understanding remembering information interacting with others concentration persistence or maintaining pace adapting or maintaining oneself if they're too marked you qualify as a matter of law for benefits you're found that you cannot work. The question then is is if you don't you have to convert this into a set of restrictions that are propounded to a vocational expert by a hypothetical question which if you have enough restrictions will eliminate competitive employment in the national economy does not mean all employment it just means a significant number and in this particular case if you look at this particular record you see that Mr. Urbanik has a problem with pace. Pace is not just the skill level the court noted recently in one of my decisions that the pace is not something that is handled simply by skill level because even unskilled jobs require a certain level of speed and persistence and pace is defined as speed and persistence and in this particular case you can look at and the court has looked at this I can you know you go back and Stuart O'Connor Spiner, Yurt, Varga, DeCamp or just some of the cases this court has said pace has to be accounted for and yet the ALJ's applying these cases use a cookie-cutter method of everything is simple routine repetitive no stress a few if any decision-making limits to occasional interaction with others and the public and co-workers and these do not adequately address the issue of speed and persistence. Let me start by noting that Dr. Ellen Rosenfeld who testified at the hearing said that she addressed attention and concentration by simple routine which is contrary to the law of the circuit. She then followed it by making a very profound comment. I mean I do want to point out that Dr. Mohr or Momont in his opinion he talked about inability to maintain attention and stamina over an eight-hour workday. I can't address the stamina issue. So in other words she indicated she could not address Mr. Urbanik's pace and his ability to persist in that job and you look at the rest of the restrictions and other things. She you look at Mr. Urbanik who suffers from back pain, neck pain, Tourette's syndrome or tics however you want to describe it, depression and anxiety. He testified on page 55 of the record at the hearing I only can sit about 10 minutes and then I got to get up and move around a little bit. This is him attending ball games in his community. I just got to go and walk around a bit and then when I and after I walk around a little bit I can't I can't just do it any longer then I got to sit down for a little bit again and then I'll have to watch a little game and then do that back and forth. A third-party report from Alan Hagenbert who was a co-worker of his on page 359 of the record noted he worked with Mr. Urbanik for four months at Wolvescraft. He was slow at his job. He also would just get up and walk away from his workstation several to many times during the workday. Again this is an issue of pace. He was asked then about his ability to perform these jobs. Why he was only working four hours a day. He testified unrebutted. I tried it once or twice and all after I was done I could not I could not even think clearly in my head and then that there is a couple of times I did I had a hard time making it home in my car. This is the one that's driving what 27 miles every day but each way? Yes and then he would say just right in my head and I couldn't tell it was because then I'm working. I tried I thought I again and just could not do it so I had been doing the four hours all the time. Dr. Pritchett noted cognitive inefficiencies in his evaluation. He noted that they were exacerbated by his emotional response and to his ability to handle the situation. Dr. Momot noted side effects from his medication would cause drowsiness and decreased ability to perform it at any kind of speed. He was reached Dr. Momot on page 561 and 562. He's reached the point of inability to maintain attention and stamina through eight hours of activity. He has made a conscious effort to remain useful employed part-time is tolerated requiring a structured work environment to compensate for his cognitive impairment reduced attention span and hypersomnia. Executive decision-making was noted as limited and that his memory was impaired. He was known to have vulnerable outbursts, impaired thinking, required medications that would affect his performance in order to control those. In other words your honors this is a situation where we have an individual who has a multitude of medical conditions all of which greatly and significantly affect his ability to perform at a consistent pace. Pursuant to case law of this circuit pace is to be accommodated and supposed to be factored into the hypothetical question. It's supposed to be added to the pile of restrictions. Nowhere in the hypothetical question proposed to the vocational expert was pace addressed. The court has issued numerous decisions on this saying that simple routine repetitive doesn't matter. Social functioning doesn't matter because that it deals with either social functioning or adaption. Changes doesn't matter. Varga indicated that that does not address pace. All of these cases are on line with this. The times that the court has deviated from this is when there has been a clear example of where the medical condition could be resolved by a particular limitation. In those cases those have been where the individual has anxiety related primarily to his ability or working around others and by limiting contact that anxiety would diminish. In those types of cases the court has said pace is not required. All other times the court has indicated pace. Now unfortunately the court has been doing this for 10 years and Social Security has done very little to heed the court's warnings on how this is to be. That does not mean that the court should deviate from what it believes is correct point of law. It just means that Social Security which I defined many times as an ocean liner trying to turn by use of a spoon for a rudder just hasn't caught up after this 12 years that this court has been making this finding. And I would encourage and ask the court to continue to do so again and find that pace is an issue in this case and this matter should be remanded for the sole purpose of addressing his diminished pace is an inability to perform either by persistence or speed. With that if there are no questions I will reserve the remainder from my rebuttal. Thank you counsel. Good morning your honors. Chavit Adili on behalf of the Commissioner. Opposing counsel is asking for a categorical rule that requires the ALJ to address pace in every decision irrespective of whether the factual inquiry in the specific case the specific factual circumstances of the case require such a limitation. And in this case the ALJ reasonably relied on the testimonial opinion of Dr. Rosenfeld and also on her reasonable evaluation 21 page evaluation of the remaining medical evidence to conclude that no such limitation was required. Dr. Rosenfeld who was retained by the ALJ at the end of the record in a practice that has been ratified this by this court many times most recently in Saunders in June of this year got a medical expert to come in and help her understand what limitations were limitations opined by the doctor did not include a pace limitation. Now opposing counsel has selectively cited notes by the doctors for example in his brief he cites the January 2010 note by Dr. Tobert that said quote it would Mr. Mr. Urbanek's impairments would make it difficult for him to hold down a full-time job. It's important for the court to note that that note was four and a half years before the adjudicated period in this case began. Mr. Tobert I'm sorry Mr. Urbanek alleged disability beginning in September of 2014 in this case and by May 2011 Dr. Tobert said that he thought it was very difficult to measure how much Mr. Urbanek's impairments limited him and then by April 2015 Dr. Tobert said that although he thought that Mr. Urbanek's motivation regarding his treatment program and where he motivated and active in his treatment plan he could do much better and be returned to full functional status. Also the ALJ noted that although he had been diagnosed with sleep apnea as early as 2006 he had not reliably used the CPAP machine until 2015 when he received a new machine and that after that time his doctors frequently noted that his CPAP treatment was more effective than he seemed to be expressed skepticism that he was being fully forthcoming about how useful and effective his CPAP machine was being. So too with Dr. Momot who in January of 2013 again a year and a half before the adjudicated period in this began gave the opinion that opposing counsel cites but by March 2015 said quote I believe he can find meaningful work I believe he will be much better off in a structured environment with repetition chores which arguably is very close to what the ALJ found here an environment with simple decision-making few workplace changes and a limitation to only simple work and encouraged him to continue looking for work that's what Dr. Momot says in 2015 which is during the period we adjudicate that was adjudicated here and so the record does not if you do a sort of a fact look at a fact-specific inquiry of this specific case does not demand the limitation that opposing counsel wants what he wants is a categorical rule that says a moderate rating in concentrating persisting or maintaining pace demands that the ALJ address pace in every case and that is just not that's not what the Supreme Court which recently reiterated in B stack that you know the review of social security cases is a fact-specific inquiry I think that that would not be sort of in keeping with the spirit of that admonition on when you look at characterizes the residual capacity finding as a pile of restrictions and it is in a sense but what it is is the ALJ has to put together an account of what he or she thinks is like a full statement of the limitations the specific functional work-related limitations that are supported by the record and the ALJ has a little bit of discretion in that regard if evidence could go one way or the other there's kind of a zone of choice that the ALJ can make as a judge and choose that path so long as that path is reasonable then this court shouldn't disturb it it should be protected under the substantial evidence standard which is meant to be a forgiving standard which again in B stack the the Supreme Court recently reiterated was a low opposing counsel also says that simple root limitation to simple routine repetitive tasks is not a real limitation now this court has kind of gone both ways on this issue this year it has affirmed in circumstances where things on a fact-specific inquiry in several cases on a fact-specific inquiry the ALJ reasonably accommodated the specific limitation supported by the in Josephic in Piedelewski and in for this case's purposes Saunders which is a situation where the ALJ in an abundance of caution with conflicting evidence in the record went and got the testimony of a medical expert and then relied entirely on that testimony to give a reasoned account of the mental limitations that were indicated by the record that's what we have here I would be happy I don't know if the court would like it I would be happy to address briefly the changes in the regulations because much of the case law that opposing counsel points to is case law that deals with the prior regulations and what one of the things that had driven the courts concerns with the prior regulations is that the agency hadn't taken occasion to explicitly define what moderate meant and so moderate exists in the middle of a five-point scale from none to mild to moderate to marked to extreme and so I think the court seeing that moderate existed in the middle thought well this is you know if you take it on kind of a percentage scale this could be pretty significant and moderate can connote significant limitations but the agency took occasion to define it specifically to mean that a moderate rating in a domain in the B criteria connotes an adequate effective and independent ability to sustain that activity or the activities within that domain fairly and fair as we as we sort of argue in our brief is not further defined but the ordinary meaning of the word fair is average or adequate right so an individual might have significant limitations with a moderate rating or might have relatively light limitations with a moderate rating it's a fact specific inquiry what the the facts of the specific case drive if the facts of the specific case drive the ALJ's decision and undergird it and support it then that then it should be found to be supported by substantial evidence if in some of the case law as we argue in our brief it seems like the court is concerned that the ALJ there gave short shrift to evidence that suggested greater limitations here there is conflicting evidence and certainly as opposing counsel notes at certain points in the record his doctors or Mr. Urbanek's doctors thought there were greater limitations but as the ALJ cites there was really equivocal evidence and later doctors seem to think go the other way for example in 2014 late 2014 December 2014 Dr. Pritchett did a neuropsychological evaluation and opposing counsel cites a great deal of that report but doesn't cite the conclusion in which Dr. Pritchett said I think he can work I think he can return to work and in fact noted that his job the job he's been doing part-time as a punch press operator was good work for him to do and ultimately in this case the ALJ found him to be capable to return to that work only full-time right so there was plenty of evidence in this case for the ALJ to reach the conclusion that she did and because that's the case and because there is no sort of situation in this case where that has been the case in some other cases where the ALJ seems to have overlooked key evidence that went the other way or seems to have made some mistake of law her decision which was within the zone of choice permitted by the evidence should be afforded deference under the substantial evidence standard opposing counsel makes a series of arguments against the validity of dr. Rosenfeld's opinion one which was is made in passing is that she hadn't proven her expertise she's a psychologist her resume is in the record the attorney who represented mr. Urbanek before the ALJ conceded her expertise and she testified that she understood the agency's regulations it's not clear what more she needed to do she also testified a in her testimony she provided testimony about what she thought the claimants ratings were under the B criteria she testified under the newbie criteria which is what the ALJ adjudicated he here and and it makes clear that she knew there had been a change it was familiar with the new listings so so that argument I think is he's not that does not have merit I think though I guess one last point I'll make is opposing counsel says that his clients testimony was unrebutted but he for the first time in this court really marshals opinion evidence he hasn't challenged and did not challenge in the court below the weighing of the medical source opinions other than dr. Rosenfeld opinion and he didn't challenge the ALJ is evaluation of the weight to assign evidentiary way to assign to his clients testimony the ALJ in any event evaluated both of those things reasonably but as we noted in our brief he's at least forfeited those arguments by not raising them I see that my time has expired I thank your honors and ask you to affirm for the reasons expressed in our brief Thank You counsel I have a lot to address let's start by this constant recitation of the B stick decision the standard of review for these cases dates back to the 1930s with the NLRB cases and just as Douglas's writing of what substantial evidence is nothing's changed the Commissioner can cite B stick all at once is some sort of revelation it's not the judge still has to explain his conclusions that's the substantial evidence test and in this particular case it's not all of a sudden Mr. Urbana indicating that this issue raises the state agency doctors on page 114 and 15 found moderate limitations and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods that's their finding all right we're not asking for a categorical rule there is no categorical rule in these social security cases they are fact-intensive that's why we're arguing facts we're not all asking for a categorical and as far as dr. Pritchett counsel with all due respect dr. Pritchett concluded that mr. Urbana could work when did dr. Pritchett become a vocational expert dr. Pritchett is capable of assessing what restrictions are and I read the findings in dr. Pritchett's opinion that support the conclusion that he cannot sustain competitive employment as far as the whole issue of pace again we talk again counsel starts talking about moderate but if if I did not cite it in my brief I will be perfectly glad as a supplemental to this argument the Commissioner in the registry the Federal Registry adopting the new regulations indicated that the term moderate as they have defined it is something that Social Security had long-standing understanding of so in other words they can define it now but they're then turning around and saying well we're just defining what we already understood to be so there's no change in anything again it just comes down to this simple fact of whether there's enough there and I'm not saying that the judge had to follow this and say that there was a issue the judge at least had to address it and say why there wasn't and the decision fails to do so on that thank you if there are no questions thank you counsel thank you thanks to both counsel and the case is taken under advisement